1   William M. Audet (CA State Bar #117456)
    waudet@audetlaw.com
2   Joshua C. Ezrin (CA State Bar # 220157)
3   jezrin@audetlaw.com
    AUDET & PARTNERS, LLP
4   221 Main Street, Suite 1460
    San Francisco CA 94105
5   415.568.2555 Telephone
6   415.568.2556 Facsimile

7   *Attorneys for Plaintiffs*

8

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  | GERALD DARRINGER and CAROL | Civil Action No. 5:15-cv-00300 |
    | DARRINGER, | |
13  | | **SECOND AMENDED COMPLAINT** |
14  | Plaintiffs, | |
15  | v. | **JURY TRIAL DEMANDED** |
16  | INTUITIVE SURGICAL, INC., | |
17  | Defendant. | |

18

19      Plaintiffs, complaining of the Defendant by their attorneys, respectfully allege, upon

20  information and belief, the following:

21                          **THE PARTIES**

22      1.      The Plaintiff, GERALD DARRINGER, is a resident of and domiciled in Thiells,

23  New York. Plaintiff, CAROL DARRINGER, is the wife of GERALD DARRINGER and a

24  resident of and domiciled in Thiells, New York.

25      2.      The Defendant, INTUITIVE SURGICAL, INC. (hereinafter "INTUITIVE"), is a

26  foreign business corporation, duly organized and existing under and by virtue of the laws of the

27  State of Delaware with its principle place of business in the State of California.

28

                                    1

1

## JURISDICTION AND VENUE

2

3.	Jurisdiction for this action in the United States District Court arises under 28

3

U.S.C. Sections 1332(a)(l) and 1332(c)(2) as this is a civil action based on complete diversity of

4

citizenship in that the surgery performed on GERALD DARRINGER, a resident of New York

5

but a machine sold and distributed under the laws of Delaware by a corporation with its

6

principle place of business in the State of California. The amount in controversy exceeds

7

$75,000 exclusive of costs and interest.

8

## GENERAL ALLEGATIONS

9

4.	Plaintiff GERALD DARRINGER was advised that he needed to have a

10

laparoscopic left pyeloplasty performed.

11

5.	Plaintiff's physician presented him with information and materials prepared by

12

Defendant promoting the benefit of da Vinci robotic surgery over all other methods of surgery.

13

Specifically, his physicians told him that due to the da Vinci robotic approach he would heal

14

faster, have a better outcome and have less pain.

15

6.	Based on the representations made by his physician and written materials he was

16

provided, the Plaintiff agreed to proceed with da Vinci robotic surgery. Plaintiff GERALD

17

DARRINGER underwent surgery on February 16, 2012, which resulted in damage, including

18

severe vascular injuries, transected veins, and shock from bleeding. Due to the injuries sustained

19

during the da Vinci Robotic surgery, Plaintiff GERALD DARRINGER had and will continue to

20

have multiple painful additional medical tests and procedures, physician consultations and

21

additional surgeries and has suffered and will continue to suffer pain, loss of function, emotional

22

distress, and permanent injury.

23

7.	On April 19, 2013, Plaintiff first learned of litigation against Intuitive Surgical,

24

Inc., related to defects in the Da Vinci robot through an online article on CNBC's website titled,

25

"Patients Scarred After Robotic Surgery." Prior to reading the aforementioned article, Plaintiff

26

was unaware of any alleged defects related to the Da Vinci robot.

27

8.	In spite of exercising reasonable diligence in investigating potential causes of his

28

injuries, by reviewing his medical records and discussing his injuries with his healthcare

SECOND AMENDED COMPLAINT

providers, there is no information in Mr. Darringer's medical records, nor any conversation with healthcare providers that would have given Mr. Darringer reason to suspect that the robot used during his procedure was defective or could be related to the injuries he sustained described herein. As such, Mr. Darringer initially concluded his injuries may have been caused by human or other error.

9.   For the reasons described above, Plaintiffs had no actual or constructive knowledge of any connection between Mr. Darringer's injuries and the Da Vinci robot until April 13, 2013. After reading said article, Mr. Darringer conducted further research regarding the Da Vinci robot, and ultimately contacted Counsel. Plaintiffs filed their initial Complaint on January 21, 2015, less than two years after learning of the possible connection between Mr. Darringer's injuries and defects in the Da Vinci robot.

10.   Defendant INTUITIVE is a Delaware corporation with its principal place of doing business in Sunnyvale, CA.

11.   Defendant INTUITIVE is a publically traded company on the NASDAQ exchange, with a current market value of more than two billion dollars.

12.   Defendant designed, manufactured, tested, sold, promoted and labeled the da Vinci surgical robot.

13.   On its website defendant asserts that it is the global technology leader in surgical robotic products.

14.   The said robotic device is used in hospitals for a variety of surgeries, including gynecological, and including therein hysterectomies.

15.   Defendant has promoted its device as (a) safe, and (b) safer than other comparative methods of surgery including, in the case of hysterectomies, prostatectomies, laparoscopy, vaginal surgery and open surgery.

16.   Defendant utilizes prominent websites aimed at consumers, seeking to create demand for the use of its robotic device by patients who consult surgeons.

17.   Defendant sold its device through a calculated program of intimidation and market management, forcing hospitals and physicians to purchase it in order to appear to be

3

competitive, and creating a fear in their minds that if they did not have this technology they would lose business to competitors.

18.    Defendant reinforced its calculated program, as stated in the preceding paragraph, by placing, on its website for potential patients, names of certain physicians who had performed 20 surgeries with the device.

19.    The use of Defendant's robotic device in surgery presents substantial risks of complications and injuries, including de-vascularization of the vaginal cuff impeding healing, partial thermal injury burns to bowel, post-surgical abscesses, tears, dehiscence, bleeding, hematomas, sepsis, and fistulas.

20.    More specifically, Defendant's robotic device can cause damage to the bowel, blood vessels, arteries, ureters, bladder and vaginal cuff.

21.    In addition, due to lengthened time of surgery, patients are unnecessarily exposed to anesthesia for a dangerous period of time.

22.    On occasion these complications and injuries cause and/or contribute to infectious processes from thermal injury causing abscess formation and can lead to the untimely and premature death of the patient.

23.    Defendant is has at all material times had knowledge of the aforesaid risks and complications associated with the use of the said robotic device.

24.    Defendant does not provide adequate warnings to physicians and patients about the risks and complications associated with the use of its robotic device. Defendant has not done, nor sponsored, adequate testing on its said device before and after marketing it to determine whether in random tests its said device is either safer or more effective or otherwise superior to other surgical and laparoscopic methods to which it compares itself.

25.    Defendant has not done adequate post marketing surveillance of complications and injuries that have occurred in actual practice.

26.    Defendant has not done, nor sponsored, any testing as to long-term outcomes, in comparison to other surgical and laparoscopic methods.

SECOND AMENDED COMPLAINT

1
2
3

27.     Defendant has not revealed, through publications or reports to the Food and Drug Administration and other governmental bodies, the true extent of complications and injuries, which have occurred in actual practice.

4
5

28.     Defendant has suppressed reports and complaints of complications and performance errors due to the use of its said device.

6
7
8

29.     Defendant does not adequately train physicians nor proctor them properly on the use of its device, thereby inducing them to cause complications and injuries, which would be avoided in the hands of properly trained physicians.

9
10
11

30.     Defendant represents that they will have skilled technicians in the operating room or on emergency call in the event of problems arising with its said device, but often has neglected to do so.

12
13
14

31.     Defendant has over-promoted its device to hospitals, physicians and the public, including potential consumers, combined with minimizing the risks and complications associated with its use.

15
16
17
18

32.     The da Vinci surgical robot is defective in that it relies upon the use of monopolar energy to cut, burn and cauterize tissue, whereas safer methods are available such as bipolar energy and ultrasonic energy, which would reduce substantially the risk of complications.

19
20

33.     The device has inadequate insulation for its arms thereby allowing electrical current to pass into tissue outside of the operative field.

21
22
23

34.     The insulation on the shafts of the said device becomes torn and worn in places, without the awareness of the physician user, allowing electrical current to pass into tissue outside of the operative field, causing damage.

24
25
26

35.     Defendant has failed to warn users and consumers of the said robotic device about the inadequate insulation on the arms and the potential for electrical current to pass into tissue outside of the operative field.

27
28

SECOND AMENDED COMPLAINT

36.    Due to design defects, defendant's devices have malfunctioned during the course of operative use causing injury, including the necessity of converting the procedure into open surgery, or often requiring subsequent surgeries to deal with complications of robotic use.

37.    Defendant has failed to warn users and consumers of its said device of the design flaws stated in the preceding paragraphs, although it has reached out directly to consumers to promote its asserted advantages.

38.    Defendant had specific knowledge and awareness of the dangers of monopolar current and that there were safety modalities commercially available that could have greatly diminished or eliminated some of these risks, yet the Defendant elected not to include these safety features on the da Vinci Robotic platform.

39.    Through its unique knowledge and expertise, and through its marketing statements to physicians and patients in advertisements, promotional materials, labels and other communications as herein alleged, Defendant represented that they were in possession of facts demonstrating that Da Vinci was safer and more effective than traditional forms of surgery and that its is not defective, when in fact it possessed information they did not disclose that they had a duty to disclose to ensure such physicians were not misled.

40.    Although Defendant knew or had no reasonable ground to believe the truth of their representations to Plaintiff and his physicians, Plaintiff and his physicians reasonably relied on these misrepresentations and misleading facts.

41.    Defendant took unconscionable advantage of its dominant position of knowledge with regard to Plaintiff and his physicians and engaged in constructive fraud in their relationship.

42.    Defendant intentionally concealed and suppressed the true facts concerning the Da Vinci robot with the intent to defraud Plaintiff, his surgeons, healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general, in that Defendant knew that the physicians and healthcare providers would not have used the Da Vinci robot, and Plaintiff would not have been injured if they had known the true facts concerning the dangers of the Da Vinci robot.

43.    In failing to provide adequate warnings of known risks, which did cause Plaintiffs injury, as described herein, Defendant exhibited a conscious and reckless disregard of the health and safety of Plaintiff and the general public.

44.    As a result of the foregoing reckless, fraudulent and deceitful conduct by Defendant, and each of them, Plaintiffs, for the sake of example and by way of punishing Defendant, seeks punitive damages according to proof.

45.

46.    Defendant has obtained and continues to maintain approval of the uses of its device from the Food and Drug Administration by failing to fully inform them of its knowledge of risks and complications associated with the use of its device.

## FIRST CAUSE OF ACTION- PRODUCT LIABILITY

47.    Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

48.    Defendant placed into the stream of commerce its aforesaid device which was defective in design, as previously pleaded.

49.    Defendant owed Plaintiffs a duty to exercise reasonable care when designing, testing, manufacturing, marketing, advertising, promoting, distributing, and/or selling da Vinci Robot.

50.    At all relevant times to this action, Defendant owed a duty to properly warn Plaintiff, the medical community, and the Public of the risks, dangers and adverse side effects of the da Vinci Robot platform.

51.    Defendant breached its duty by failing to exercise ordinary care in the preparation, design, research, testing, development, manufacturing, inspection, labeling, marketing, promotion, advertising and selling of da Vinci Robotic Surgery, as set forth below:

a.  Failing to test da Vinci Robot properly and thoroughly before promoting the robotic surgical platform using monopolar current to the market;

b.  failing to analyze properly and thoroughly the data resulting from the pre-marketing tests of monopolar current used in the da Vinci Robot platform;

7

c.   failing to report to the FDA, the medical community, and the general public those data resulting from pre- and post-marketing tests of the da Vinci Robot platform which indicated risks associated with its use;

d.   failing to conduct adequate post-market monitoring and surveillance of post-surgical complications associated with the da Vinci Robot platform using monopolar current;

e.   failing to conduct adequate analysis of adverse event reports;

f.   designing, manufacturing, marketing, advertising, distributing and promoting the da Vinci Robot platform directly to consumers, including Plaintiff, without adequate warning of the significant and dangerous risks of monopolar current and the da Vinci Robot platform and without proper instructions to avoid the harm which could foreseeably occur as a result of using monopolar energy on the existing da Vinci Robot platform;

g.   failing to exercise due care when advertising and promoting da Vinci Robot;

h.   negligently continuing to manufacture, market, advertise, and promote da Vinci Robot after Defendant knew or should have known of the risks of serious injury and/or death associated with using monopolar current to perform certain aspects of the surgery;

i.   failing to use due care in the preparation and development of the da Vinci Robot to prevent the aforementioned risk of injuries to individuals through the use of monopolar current;

j.   failing to use due care in the design of the da Vinci Robot with special regard to the insulation of the robotic arms and instruments to prevent the aforementioned risk of injuries to individuals during the routine course of surgery;

k.   failing to conduct adequate pre-clinical testing and research to determine the safety of the use of monopolar current and the insulation of the robotic instruments to be used in robotic surgeries, with special regard to the reusing of the instruments up to ten times in ten different patients;

l.   failing to conduct adequate intra-operative surveillance and post-operative complication studies to determine the safety of the use of monopolar energy during the surgical robotic procedure taught by INTUITIVE SURGICAL INC., while Defendant knew or should

SECOND AMENDED COMPLAINT

have known that intra-operative surveillance and post-operative complication analysis would be the only means to determine the relative risk of using monopolar when performing a robotic surgery causing severe thermal injury to bladder, ureter, bowel,  and blood vessels, in the absence of clinical trials which cannot be conducted for this purpose, and that such surveillance would be necessary for a due diligence program that would alert Defendant to the need to change the technique for the use of monopolar current or to withdraw it from the market altogether;

m.  failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing of issues with monopolar energy and post-marketing surveillance of monopolar energy related injuries and complications to Plaintiff, consumers, the medical community, and the FDA;

n.  failing to accompany marketing materials promoting the da Vinci Robotic platform using monopolar current with proper warnings regarding all possible adverse side effects associated with the use of the same;

o.  failing to use due care in the manufacture, inspection, and safety evaluation of the da Vinci Robotic platform to prevent the aforementioned risk of injuries to individuals who underwent a da Vinci Robotic surgery;

p.  failing to use due care in the promotion of da Vinci Robotic platform to prevent the aforementioned risk of injuries to individuals;

q.  failing to use due care in the sale and marketing of the da Vinci Robot to prevent the aforementioned risk of injuries to individuals who were to undergo robotic surgery;

r.  failing to use due care in the selling of the monopolar scissors to prevent the aforementioned risk of injuries to individuals who underwent da Vinci Robotic surgery;

s.  failing to provide adequate and accurate training and information to the sales representatives who sold the da Vinci Robot;

t.  failing to provide adequate and accurate training and information to healthcare providers for the appropriate use of the da Vinci Robot for surgery;

SECOND AMENDED COMPLAINT

u.   failing to conduct or fund  research into the development of safer robotic surgical instruments which would pose the least risk of causing severe thermal injury to bowel, bladder, ureter, and blood vessels;

v.   failing to educate healthcare providers and the public about the safest use of the monopolar scissors in da Vinci Robotic surgery;

w.  failing to give healthcare providers adequate information to weigh the risks of serious injury and/or death for a given patient using the da Vinci Robotic platform and technique featuring the use of monopolar current; and,

x.   being otherwise reckless, careless and/or negligent.

52.   Defendant placed into the stream of commerce its aforesaid device, which was defective in its labeling and warnings, as previously pleaded.

53.   Defendant placed into the stream of commerce its aforesaid device, which was defective in its testing and approval, as previously pleaded.

54.   At the time the device left the possession of Defendant it was in an unreasonably dangerous and defective condition for application for robotic surgery using monopolar energy.

55.   Despite the fact that Defendant knew or should have known that the da Vinci Robotic platform using monopolar current had increased the risk of serious injury and/or death, Defendant continued to promote and market the da Vinci Robotic platform to consumers, including Plaintiff GERALD DARRINGER, when safer and more effective methods of treatment were available.

56.   The Defendant designed, tested, manufactured, packaged, marketed distributed, promoted, and sold the da Vinci Robot, placing the da Vinci Robotic platform into the stream of commerce.

57.   The da Vinci Robot was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendant in a defective and unreasonably dangerous condition to consumers, including the Plaintiff.

58.     The da Vinci Robot was expected to reach, and did reach, users and/or consumers, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was manufactured and sold.

59.     Plaintiff's surgeons used the da Vinci Robotic platform including monopolar current as instructed by and certified by and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendant. Plaintiff's surgeons, attended a surgical lab for hands-on initial training and were proctored for by a proctor employed by INTUITIVE SURGICAL.

60.     The da Vinci Robotic platform was unreasonably dangerous in that, as designed, it failed to perform safely when used by ordinary consumers, including Plaintiff's surgeon, including when it was used as intended and in a reasonably foreseeable manner.

61.     The da Vinci Robotic surgery was unreasonably dangerous in that, as designed, the risks of serious injury and/or death, including bowel, bladder, ureteral, abscess formation, permanent scarring, or vascular injury, posed by its monopolar current risks exceeded any benefit the Robotic approach was designed to or might in fact bestow.

62.     The da Vinci Robotic platform was unreasonably dangerous in that, as designed, it was dangerous to an extent beyond that contemplated by the medical community, and ordinary users, including the Plaintiff.

63.     The da Vinci Surgical Robot was defective in its design in that it neither bore, nor was packaged with, nor accompanied by, warnings adequate to alert the medical community, including Plaintiff's surgeon, to the risks described herein, including, but not limited to, the risk of serious injury and/or death, including bowel, bladder, ureteral, vaginal cuff de-vascularization, or vascular injury, posed by its monopolar current risks. The da Vinci Robot was not accompanied by adequate labeling, instructions for use and/or warnings to fully apprise the medical, hospital, operating room and/or scientific communities, and potential patients, including Plaintiff, of the potential risks and serious side effects associated with its use, thereby rendering Defendant liable to the Plaintiff.

64.     There were safer alternative energy modalities available including bipolar energy and ultrasonic energy.

65.     Monopolar energy, as used and taught on the da Vinci Robotic platform, was unsafe for normal or reasonably anticipated use in performing the colpotomy incision or the amputation of the uterus.

66.     In light of the potential and actual risk of harm associated with the use of monopolar energy so close to bowel, bladder, ureter, vaginal cuff, and blood vessels, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that the da Vinci Robotic platform should not have been marketed in that condition.

67.     Although Defendant knew or should have known of the defective nature of its da Vinci Robotic platform using monopolar current, it continued to design, manufacture, market, and promote the use of its da Vinci Robotic platform so as to maximize sales and profits at the expense of the public health and safety. Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by the continued use of monopolar energy on its robotic platform.

68.     Plaintiff could not, through the exercise of reasonable care, have discovered the risk of serious injury and/or death associated with and/or caused by the da Vinci Robotic platform featuring monopolar current. Plaintiff, if aware of these additional risks, could have chosen surgical procedures with similar efficacies but without these additional risks. As a result, Plaintiff suffered the personal injuries described herein.

69.     Information given by Defendant to the medical community and to the consumers concerning the safety and efficacy of the da Vinci Robotic platform, especially the information contained in the advertising and promotional materials, did not accurately reflect the serious and potentially fatal side effects.

70.     Had adequate warnings and instructions been provided, Plaintiffs surgeon would not have suggested a robotic approach, and Plaintiff would have had at a much lower risk of the harmful side effects described herein.

SECOND AMENDED COMPLAINT

71.     As a direct and proximate consequence of Defendant's negligence, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, the Plaintiff GERALD DARRINGER, sustained injuries and damages alleged herein.

72.     That by reason of the foregoing and Defendant's aforesaid conduct, among other things, the Plaintiff GERALD DARRINGER suffered injuries which caused him to undergo additional surgeries and medical procedures, endured pain and suffering and will continue to do so in the future, has suffered mental anguish and will continue to do so in the future, has lost the pleasure of sexual activity, and has incurred medical expenses.

73.     Plaintiff has incurred and Defendant is liable for certain expenses, including hospital, surgical and medical treatment, transportation costs as a result of, among other things, Defendant's conduct.

74.     As a result of its said conduct, Defendant has become strictly liable to Plaintiff.

75.     Defendant's conduct in continuing to market, sell and distribute the aforesaid devices after obtaining knowledge they were defective and not performing as represented and intended, showed complete indifference to and/or a conscious disregard for the safety of others justifying an award of punitive damages for aggravating circumstances in such a sum which will serve to deter defendant and others from similar conduct in the future.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and such other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION- GENERAL NEGLIGENCE & NEGLIGENT TRAINING & PROCTORING & NEGLIGENT CERTIFICATION

76.     Plaintiffs repeat, reiterate and reallege each and every allegation and cause of action contained herein as if the same were set forth more fully at length herein.

77.     Defendant was careless in the design, testing, manufacturing, labeling and promotion of its aforesaid device, as pleaded in previous paragraphs.

78.     In specific, defendant failed to warn users and consumers of the risk of complications associated with the use of its said device, risks of monopolar current use, including the damage to the bladder, bowel, ureter, rectum and blood vessels; the rectum and bowel which was a proximate cause of Plaintiff GERALD DARRINGER'S additional surgery and medical treatments resulting in long term pain and suffering.

79.     Defendant took it upon itself to "train" and "certify" Plaintiff's surgeon on the use of the da Vinci Robotic platform using monopolar current. Upon belief the Defendant specifically trained Plaintiff's surgeon on the use of monopolar current via operative endo-shear scissors during the dissection of the seminal vesicles leading to increased tissue damage, a large rectal laceration, and chronic inflammatory changes.

80.     Defendant did not properly proctor and/or properly instruct Plaintiff's surgeons and attending staff as to the safe use of its device nor how to detect complications which its said device causes and is known to cause.

81.     Defendant had a financial incentive to promptly train, proctor, and certify Plaintiff's surgeon without regard to whether or not Plaintiffs surgeon was truly skilled and competent on the da Vinci Robotic platform.

### THIRD CAUSE OF ACTION- LOSS OF CONSORTIUM

82.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

83.     As a direct consequence of the injuries sustained by Plaintiff GERALD DARRINGER while undergoing da Vinci Robotic procedure, Plaintiffs have been deprived the normal companionship, company, affection, regard, assistance, comfort, sexual relations, and emotional stability from their respective spouses, as set forth above.

84.     These physical and emotional consequences of the injuries have negatively impacted the quality and caused undue hardship to the marriage relationships.

**WHEREFORE**, Plaintiffs demand judgment against Defendant and seeks compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and such other further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts and issues so triable.

## GLOBAL PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully demand judgment against Defendant on each count as follows:

1. For past and future general damages, according to proof;

2. For past and future medical and incidental expenses, according to proof;

3. For past and future loss of earnings and/or earning capacity, according to proof;

4. For future medical monitoring costs, according to proof;

5. For punitive and exemplary damages in an amount to be determined at trial;

6. For prejudgment interest on all damages;

7. For past and future costs of suit incurred herein;

8. For such other and further relief as the Court may deem just and proper, including prejudgment interest.

All together with the interest, costs and disbursements of this action.

Dated: San Francisco, California

August 30, 2015                                        AUDET & PARTNERS, LLP

                                                       _____
                                                       Joshua C. Ezrin
                                                       221 Main Street, Suite 1460
                                                       San Francisco, CA  94105
                                                       415.568.2555 T
                                                       415.568.2556 F
                                                       jezrin@audetlaw.com
                                                       *Attorneys for Plaintiffs*

15

SECOND AMENDED COMPLAINT