UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD DARRINGER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>    Defendant. | Case No. 5:15-cv-00300-RMW<br><br>**ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 26 |

On August 20, 2015, plaintiffs Gerald and Carol Darringer filed a Second Amended Complaint alleging claims of product liability, negligence, and loss of consortium against defendant Intuitive Surgical, Inc. Dkt. No. 25 ("SAC"). Before the court is Intuitive's motion to dismiss the SAC, Dkt. No. 26. For the reasons set forth below, the court DENIES the motion to dismiss.

**I.    BACKGROUND**

This dispute centers on the negative experiences Gerald Darringer suffered after undergoing a surgery using the da Vinci robotic platform ("Da Vinci") manufactured by Intuitive. Intuitive is a major designer and manufacturer of surgical robotic products, including the Da Vinci Robot. SAC ¶¶ 12-14. Intuitive promotes the Da Vinci to hospitals and on websites, claiming that it is safe and safer than other comparative surgery methods. *Id.* ¶¶ 15-17.

Darringer was advised to undergo a laparoscopic left pyeloplasty. *Id.* ¶ 4. His physician

provided him with information and materials promoting the use of the Da Vinci prepared by Intuitive. *Id.* ¶ 5. Darringer's physician told him that by choosing to use the Da Vinci, he would heal more quickly, have a better outcome, and suffer less pain. *Id.* ¶ 5.

On February 16, 2012, Darringer underwent a surgery using the Da Vinci. *Id.* ¶ 6. Darringer agreed to the use of the Da Vinci based on representations made by his physician and on the written materials provided to him. *Id.* As a result of the surgery, Darringer suffered injuries, including "severe vascular injuries, transected veins, and shock from bleeding." *Id.* Plaintiffs allege that due to those injuries, Darringer will have to undergo additional medical procedures and will continue to suffer "pain, loss of function, emotional distress, and permanent injury." *Id.*

Plaintiffs allege that Intuitive "breached its duty by failing to exercise ordinary care in the preparation, design, research, testing, development, manufacturing, inspection, labeling, marketing, promotion, advertising, and selling" of the Da Vinci. *Id.* ¶ 51. Plaintiffs also allege that Intuitive's advertising and promotional materials "did not accurately reflect the serious and potentially fatal side effects" of the Da Vinci Robot and that Darringer's injuries were a consequence of Intuitive's "negligence, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts." *Id.* ¶¶ 69, 71. Moreover, Darringer alleges that he "could not, through the exercise of reasonable care, have discovered the risk of serious injury and/or death associated with and/or caused by" the Da Vinci. *Id.* ¶ 68.

Plaintiffs filed their initial complaint on January 21, 2015 and filed an amended complaint on May 11, 2015. Dkt. Nos. 1, 15. Defendant moved to dismiss the amended complaint on June 2, 2015. Dkt. No. 18. The court granted defendant's motion to dismiss on August 3, 2015 but granted leave to amend. Dkt. No. 24. Plaintiffs filed the second amended complaint on August 20, 2015. Dkt. No. 25. Defendant moved to dismiss the second amended complaint on September 10, 2015. Dkt. No. 26. Plaintiffs filed an opposition, Dkt. No. 29, and defendant filed a reply, Dkt. No. 30.

## II. ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion tests the legal

sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

The SAC, like the first amended complaint that preceded it, asserts claims for products liability, negligence, and loss of consortium against Intuitive. Under California Code of Civil Procedure § 335.1, there is a two-year statute of limitations to bring these personal injury claims. The court previously found that because Darringer's surgical injury occurred on February 16, 2012, and plaintiffs did not file suit until January 21, 2015, plaintiffs' claims were barred under the statute of limitations. Dkt. No. 24. In response, plaintiffs argue that additional facts added to the SAC tolled the statute of limitations. Dkt. No. 29 at 1. Specifically, plaintiffs argue that Darringer relied on consultations with his physician and that Intuitive fraudulently concealed information regarding defects in the Da Vinci. *Id.* Defendant argues that the SAC's new allegations are insufficient to toll the statute of limitations. Defendant also argues that plaintiffs have failed to state a claim for punitive damages. The court addresses each of these issues in turn.

### A. Statute of Limitations

The delayed discovery rule may be invoked to toll the statute of limitations until "the plaintiff knows both the existence and cause of his injury." *Garcia v. Brockway*, 526 F.3d 456,

3
5:15-cv-00300-RMW
ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT
RS

465 (9th Cir. 2008) (quoting *United States v. Kubrick*, 444 U.S. 111, 113 (1979)). In order to rely on the delayed discovery rule, a plaintiff "must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (applying delayed discovery rule to products liability claim). "In California, the discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 391 (1999)). "[P]laintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put [them] on inquiry or if they have the opportunity to obtain knowledge from sources open to [their] supervision." *Fox*, 35 Cal. 4th at 807-08 (internal quotation marks omitted). "Resolution of the statute of limitations issue is normally a question of fact." *Id.* at 810.

Here, the court finds that plaintiffs have met their burden of pleading the time and manner of discovery. The SAC alleges:

> On April 19, 2013, Plaintiff first learned of litigation against Intuitive Surgical, Inc., related to defects in the Da Vinci robot through an online article on CNBC's website titled, "Patients Scarred After Robotic Surgery." Prior to reading the aforementioned article, Plaintiff was unaware of any alleged defects related to the Da Vinci robot.

SAC ¶ 7. The SAC further alleges that "Plaintiffs had no actual or constructive knowledge of any connection between Mr. Darringer's injuries and the Da Vinci robot until April 13, 2013." *Id.* ¶ 9. Plaintiffs' allegations are sufficient to meet the first element required by *Fox*.

In order to show diligence prior to April 13, 2013, plaintiffs rely on newly added paragraphs in the SAC. New Paragraph 7, quoted above in its entirety, does not describe any steps Darringer took to determine the cause of his injury *before* April 2013, so the court cannot rely on Paragraph 7 in assessing diligence. New Paragraph 8 of the SAC indicates that Mr. Darringer consulted his healthcare providers following his April 2012 injuries:

> 8. In spite of exercising reasonable diligence in investigating

> potential causes of his injuries, by reviewing his medical records and discussing his injuries with his healthcare providers, there is no information in Mr. Darringer's medical records, nor any conversation with healthcare providers that would have given Mr. Darringer reason to suspect that the robot used during his procedure was defective or could be related to the injuries he sustained described herein. As such, Mr. Darringer initially concluded his injuries may have been caused by human or other error.

SAC ¶ 8. As defendant points out, however, paragraph 8 does not allege that Mr. Darringer's consultations with doctors were aimed at determining the cause of his injuries (as opposed to seeking treatment, for example). *See* Dkt. No. 30 at 3-4. Plaintiff responds that he was relying on the advice of his physicians and was not required to independently investigate the cause of his injuries. Dkt. No. 28 at 9-11.

Plaintiffs rely on several cases in support of the argument that the discovery rule allows Mr. Darringer to rely on the advice of his physicians and does not require independent investigation. Plaintiffs cite *Sanchez v. South Hoover Hospital* for the proposition that "during the continuance of [the doctor-patient] relationship, which is fiduciary in nature, the degree of diligence required of a patient in ferreting out and learning of the negligent causes of his condition is diminished." *Sanchez v. S. Hoover Hosp.*, 18 Cal. 3d 93, 102 (1976). In *Sanchez*, the California Supreme Court examined the statute of limitations directed to malpractice actions against medical professionals, California Civil Procedure Code § 340.5, which at the time indicated that "the limitations period for actions founded in medical malpractice was 'four years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever first occurs.'" *Id.* at 95 (quoting Cal. Civ. Proc. Code § 340.5). The *Sanchez* court held that tolling did not apply to the one-year period mentioned in the statute and that the plaintiff's claims were time-barred because she suspected malpractice even at the time of her injury. *See id.* at 102. Defendant analogizes the present case to *Sanchez*, arguing that Darringer suspected that his injuries were caused by "human or other error" immediately following his surgery, but he failed to investigate. *See* Dkt. No. 30 at 6. The court finds that *Sanchez* is of only limited value in evaluating plaintiffs' claims because it concerned a physician's duty to disclose facts related to the physician's own liability, not the liability of another: "[T]he

5

1  defendant's fraud in concealing a cause of action *against him* tolls the applicable statute of
2  limitations, but only for that period during which the claim is undiscovered by plaintiff or until
3  such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." 18 Cal.
4  3d at 99 (emphasis added).

5  Plaintiffs correctly note, however, that later cases have held that "laypeople should be able
6  to rely on medical professionals in identifying the causes of their injuries, and, as a corollary,
7  laypeople should not be required to independently investigate the causes of their injuries when
8  medical professionals have apparently undertaken such an investigation." *Grisham v. Philip*
9  *Morris, Inc.*, 670 F. Supp. 2d 1014, 1026 (C.D. Cal. 2009). In *Grisham*, relied on by plaintiffs, the
10 court denied summary judgment on the statute of limitations question because the plaintiff's
11 doctors told her that her periodontal disease was caused by behaviors such as bad oral hygiene,
12 rather than by smoking the defendants' cigarettes. *See id.* at 1024-26. The *Grisham* court opined
13 that "summary judgment is a disfavored vehicle for determining whether a party exercised
14 reasonable diligence in attempting to determine the cause of her injury" because diligence often
15 involves disputed questions of fact. *Id.* at 1025.

16 Defendant attempts to distinguish *Grisham* by noting that in the present case, unlike in
17 *Grisham*, Darringer has not alleged that his doctors identified a cause for his injury that pointed
18 away from the Da Vinci robot. Dkt. No. 30 at 6-7. Defendant cites no authority, however, for the
19 proposition that in order to invoke the delayed discovery rule, a plaintiff must specifically allege
20 that doctors blamed the plaintiff's injuries on a cause other than the cause alleged in the plaintiff's
21 complaint. Accordingly, the court finds defendant's attempt to distinguish *Grisham* unpersuasive.

22 Plaintiffs also cite *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202 (N.D. Cal. 2014) as an
23 example of a product liability case applying the discovery rule where the plaintiffs learned of a
24 possible connection between their injuries and the defendant after seeing an advertisement on
25 television. *See* Dkt. No. 29 at 10. The *Eidson* court held that the plaintiff in that case "may
26 reasonably have relied on his doctor's representations rather than trying to figure out on his own
27 that Infuse was used during his surgery and that Infuse caused his injuries." 40 F. Supp. 3d at

1219. Defendant points out that in *Eidson*, unlike the case at bar, the plaintiff's doctors never told him that the medical device at issue was to be used in his surgery. *See* Dkt. No. 30 at 7. In contrast, here, plaintiff was aware that the Da Vinci was to be used even before he was injured.[1] The court again finds that defendant's attempt to distinguish the authority plaintiff cites is unpersuasive. "The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Eidson*, 40 F. Supp. 3d at 1218 (quoting *Ovando v. Cnty. of Los Angeles*, 159 Cal. App. 4th 42, 61, 71 Cal. Rptr. 3d 415, 429 (2008)). Here, while defendants argue that plaintiff should have been immediately aware of the cause of his injury, the facts pleaded in the SAC also support a plausible inference that neither plaintiff nor his doctors suspected the Da Vinci's alleged role in plaintiff's injury until some point after the surgery.

In summary, the court finds that plaintiffs' claims in the SAC are sufficient to establish a plausible claim for diligence and to toll the statute of limitations.[2]

### B. Punitive Damages

Defendant argues that the SAC pleads insufficient facts to support plaintiffs' claims for punitive damages. Dkt. No. 26 at 6-9. Punitive damages may be authorized in tort cases involving "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Plaintiffs argue that in federal court, unlike state court, the specificity required for pleading punitive damages is minimal. *See* Dkt. No. 29 at 14-15. In support of their argument, plaintiffs cite *Alejandro v. ST Micro*, which held that "[t]o satisfy the federal pleading standard for punitive damages, a plaintiff may include a short and plain prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Alejandro v. ST Micro Elecs., Inc.*, No. 15-CV-01385-LHK, 2015

---

[1] *See* SAC ¶ 6.
[2] Plaintiffs also argue that Intuitive's fraudulent concealment of defects associated with the Da Vinci robot tolls the statute of limitations. Dkt. No. 29 at 11-12. Because the court finds that plaintiffs' allegations on issues other than fraud are sufficient to allow the case to proceed past the pleading stage, the court need not reach the issue of whether plaintiffs sufficiently plead fraudulent concealment.

WL 5262102, at *11 (N.D. Cal. Sept. 9, 2015) (internal quotation marks omitted). *See also Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D. Cal. 2015) (same). Although this court questions the soundness of the decisions holding that claims for punitive damages can be based on conclusory assertions, the court will nevertheless follow the holdings of those cases.

Applying this low standard at the pleading stage, the court finds that plaintiffs have alleged sufficient facts to state a claim for punitive damages. Among other things, the SAC alleges that "Defendant intentionally concealed and suppressed the true facts concerning the Da Vinci robot with the intent to defraud Plaintiff, his surgeons, healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general." SAC ¶ 42. The SAC further alleges:

> 67. Although Defendant knew or should have known of the defective nature of its da Vinci Robotic platform using monopolar current, it continued to design, manufacture, market, and promote the use of its da Vinci Robotic platform so as to maximize sales and profits at the expense of the public health and safety. Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by the continued use of monopolar energy on its robotic platform.

*Id.* ¶ 67. While the above allegations are conclusory, the court finds plaintiffs' allegations of oppression, fraud, and malice sufficient to defeat a motion to dismiss under the standard applied by previous decisions in this district. Accordingly, the court DENIES the motion to dismiss plaintiffs' claims for punitive damages.

### III.   ORDER

For the reasons explained above, the court DENIES defendant's motion to dismiss the Second Amended Complaint.

**IT IS SO ORDERED.**

Dated: November 4, 2015

_Ronald M. Whyte_
Ronald M. Whyte
United States District Judge